Shulkin v. Shulkin Mr. Carpenter, how nice to see you again. It's been a long time. May it please the court, Kenneth Carpenter appearing on behalf of Mr. James Kisor. The Veterans Court misinterpreted the term relevant as used in the provisions of 38 CFR 3.16 c 1 by requiring that service department records that are received after an original decision Did you raise the misinterpretation of the word relevant before the court? Before the Veterans Court? Before the board, I'm sorry. Oh, before the board, no. Why shouldn't we find a waiver then? Well, if it was, I'm sorry. Did you mean before the board or before the Veterans Court? Before the Veterans Court, you raised a question of regulatory interpretation. Yes. So you knew how to, clearly knew how to raise that. But you didn't raise a similar question of regulatory interpretation regarding the board's interpretation of relevant. Well, we did with respect, your honor, rely upon our argument that the board misinterpreted the regulation and it was the court that adopted the view relied upon by the board that the term relevant required that the service records received relate to the prior decision or the original decision. With respect, I believe that we did present this argument and more importantly, for the by the Veterans Court. The Veterans Court specifically adopted the interpretation of the regulation as applied by the Board of Veterans Appeals. Specifically, that the term relevant precluded consideration of this regulation because the service records received did not relate back to the basis for the original denial. That is a misinterpretation of this regulation. You referred to the part of the Veterans Court's decision, I guess, Mr. Carpenter, at pages three through four of the joint appendix. Is that where? Specifically, the paragraph starting, however, on appendix three. That's correct, your honor. And going over to page four. That's correct. And in so doing, your honor, the Veterans Court clearly relied upon an interpretation of this regulation that imposes an additional burden or requirement for the applicability of this regulation. Specifically, that the evidence must relate to the basis for the original denial. You raise an interesting argument here before us, and I think it's a very important one, and one that I find concerning. But let's look back at the relevance of that material. In 82, Mr. Kiser had a claim for PTSD. That was denied, correct? The examiner found that he did not have PTSD. That's correct. That he had a personality disorder. That's right. And your argument is that the new material that was later acquired should change that decision because it was relevant to that decision. But yet, the material you have go to a stressor effect for PTSD. And how is it relevant if the examiner found that the problem here was a personality disorder and not PTSD? Because the term relevant relates to the ultimate decision made by the VA to make the award that the later received records that were received by the VA that in this case related to . . . How does that change the award? If the examiner found that Mr. Kiser had a personality disorder, not PTSD, how does material related to a stressor creating PTSD, how does that change that? Because, Your Honor, what is being reviewed is not the original decision or denial. What is being reconsidered is the original claim based upon the later award of service connection that is predicated in part upon relevant service records that show that this But the earlier decision references ambushes, mines, and so on. It does, Your Honor. But the trigger for 3.156c.1 is the VA's receipt of relevant service department records. It puts no qualification on those records as needing to be related to the reasons for the denial. This is a red herring, Your Honor, to focus on the basis for the original decision. The basis for the original decision has nothing to do with the plain language of 3.156c. Well, isn't it sort of evidence that the original decision was based on the things that you say are new? No, Your Honor. The basis for the VA's regulation at 3.156c.1 is to cure an administrative deficiency. That administrative deficiency is not getting relevant service department records. This is not a Q case in which we're trying to determine whether a clear and unmistakable error was made in the original decision. The determination here is merely, was there an administrative deficiency in failing to get relevant service department records? And that showing is not capable of dispute on this record. These records came in in, I believe, 2006, 2007, which was clearly after- Supposing you had newly presented evidence that showed that he enlisted in the Marine Corps. Okay. And they know he's in the Marine Corps. Would you make the same argument? No, Your Honor, because having simply been in the Marine Corps does not relate to the eventual award. Having been in the Marine Corps and participated in combat and then getting a diagnosis that was accepted by the VA was the basis for not only the reopening, but the grant. And it is that grant that allows for the reconsideration of the original claim, not the reconsideration of the original decision. It is simply a misinterpretation of this regulation to focus on the original decision. There is nothing in 3.156c that talks about reconsideration of the original decision. You reconsider the veteran's original claim. And it is that claim that has to be reconsidered as a matter of law in this case, because the requirements of 3.156c1 are both mandatory and have been met. They have been met because the VA got relevant service department records. And to suggest that you can limit the term relevant by tying it to the decision or the misinterpretation of this regulation. Does it make a difference if any record came in? Of course it does, Your Honor, because any record is not the standard. The standard is a relevant service department record that has to be part of... What makes the record relevant? That the later decision that made the grant relied in part on that service department record. And it clearly did here because the decision itself acknowledged it and the board itself in the decision on appeal acknowledged that this record was considered by the VA as relevant to the determination to make the grant. I thought the key thing was, wasn't there a second psychiatric report or psychological study that came in in 06? That's correct. And that was the... I mean, that seemed to be the turning point, so to speak, in the case in that a lot of credence was given to that. Yes, because the original diagnosis that was in the record in 1983, at the time that the VA made its decision to deny, that relied upon its own examiner who found personality disorder, there was an existing diagnosis that said that Mr. Kaiser's psychiatric symptomatic patterns had been associated with the diagnosis of post-traumatic stress disorder and cited to the APA provisions of the DSM for that diagnosis. So to say that there was no diagnosis is simply inaccurate in the record, but as it relates to this regulation, this regulation turns on whether or not there was relevant service department records received and relied upon to make the later grant. I think you'd have an argument if in 1982, for example, a medical examiner would have said, I find no PTSD because there's no stressor in the record, no evidence of a stressor, but I do find a personality disorder, but that's not what happens. But with respect, Your Honor, that's... When we talk about relevant, then it's just, you're simply accumulating information that existed in 1982. But the question of regulatory interpretation here is... And you use the word related, now it could be related to that, it could be related back to the claim, but the regulation uses a term relevant. Yes, and the relevancy is in relationship to the grant, to the award that is made in this case in 2007. When the grant was made in 2007, it relied upon relevant service department records for the two predicates that were necessary, a diagnosis of post-traumatic stress disorder and an event in service that was corroborated. It was the relevancy of those service department records that corroborated that in-service event. But there never been a dispute about an in-service event. Right. And that's not pertinent to... Let me ask you this, Mr. Cumber. Say, for example, say in 82, 83, that period, instead of what we have in the record, say there weren't any official records, but Mr. Kaiser had been able to find his superior officer, and that officer, commanding officer, had come in and submitted a declaration or an affidavit that said, yes, he was in Operation Harvest Moon, we came under attack on these days, he did this and that and so forth. Okay? Would that change the case? Because there you would have not an official government record, you would have an after the fact statement by a commanding officer. And it would. Would you still be making the same argument you are now? I could not make that argument. Because 3.156c is predicated upon the VA's receipt of service department records that existed at the time of the original decision and had not been associated with the claims file. But that's not a service department record, is it? No, the testimony would not be. I concede, in your hypothetical, 3.156c would not be available to Mr. Kaiser. 3.156c is only available to Mr. Kaiser because of the VA's receipt of service department records that were relevant and relied upon by the VA in making the determination to make the award. I guess what I'm trying to say is, how would those receipt of those official records be relevant if there had already been a statement by a commanding officer in the 82-83 time period exactly spelling out what Mr. Kaiser did? And rejected it in the 1983 decision? No, not rejected, but the examiner said, I heard what Commander X had to say. There's no question that he served in Operation Harvest Moon and was exposed to shell fire, mortar fire, etc. But I find that he doesn't suffer from PTSD, but rather has this, as we know what was found, a personality disorder. In that scenario, Your Honor, again, 3.156c would not come into play, or excuse me, you would not be attacking the 1983 decision. 3.156c is not a collateral attack on the 1983 decision. It is a supportive, helpful provision by the VA that is remedial in nature to remedy an administrative deficiency. You read the regulatory history, and it is replete with discussion that 3.156c is predicated upon an administrative deficiency. What's the administrative deficiency here? Not getting those service department records. They were available, they existed in 1983, and they didn't get them. But that's immaterial as to whether the records are relevant or not. With respect, Your Honor. Under your argument, and I share Judge Shull's concern, that under your argument, almost any scrap of material you find later on in a veteran's file, and if you're able to say, this relates back to the 82 decision, you need to reconsider my disability service connection date. The provisions of 3.156c entitle every veteran to reconsideration of original claim when the VA did not fully develop the record. And the fully development of the record under 3.156c is predicated upon service records which exist and were not associated with the claims file at the time, and then were later relevant. Not relevant in 1983, as in this case, but relevant in 2007 to make the award. If they were relevant to make the award, then that is the key that opens the door to 3.156c. I think that would help if you're arguing, making a cue argument, a clear and unmistakable error, because then what you're doing is you want to change the original diagnosis. And had the medical examiner said in 82 that I find no PTSD because there's no stressor here, nothing that indicates that, but I do find a personality disorder. And then years later, 20 years later, you uncover evidence that this colonel or the medals that he got, you uncover information that was in the record somewhere, and now it's relevant to that original PTSD decision. But here, there was no 1982 PTSD decision. Your Honor, it is simply incorrect to attempt to focus on clear and unmistakable error in the 1983 decision. No, I use that as an example. I realize that we're not dealing with acute situation here. What we are dealing with is an interpretation of a regulation. Does this regulation, when it uses the term relevant, relate to the decision in this case in 2007, or does it relate to the decision in 1983? That is the question that this panel must answer. If it relates to 2007, then there was a clear error of law in the interpretation relied upon by the Veterans Court. If it relates to the 1983 decision, which I believe would be incorrect, then the interpretation relied upon by both the Board and the Veterans Court should be affirmed. But that is simply not the correct interpretation of this regulation. I think I'm way over my time. Thank you, Your Honor. All right. Let's hear from the other side. Mr. Hillman. Good morning, Your Honors, and may it please the Court. The purpose of subsection C of 38 CFR 3.156 is to, as everyone seems to agree, ensure that the veteran is not harmed by an administrative error. So if records are unavailable at the time this claim is evaluated and are later become available, either they're declassified as one of the example states or for another reason, that administrative error should not harm the veteran. And so the VA reconsiders the claim based on those records. That is not what happened here. Mr. Hillman, let me ask you one question. We don't have jurisdiction if a matter wasn't determined by the court alone. And you argue in your brief that, or the government argues in its brief, that this whole issue wasn't argued or decided below. But it really does seem to me, and I mentioned this to Mr. Carpenter, and he agreed that if you look at pages three through four of the appendix, which is the court decision, says the board determined that the newly received service personnel records in the daily log skipped this antecedent to address the next service connection. It goes on how the board concluded that these documents were not outcome determinative. So I mean, it really does seem to me that the issue that we're presented with here, whether you agree with Mr. Carpenter or disagree, was presented below by the Veterans Court. The Veterans Court basically said, as I read it, that this material that came in in 07 wasn't relevant because the previous diagnosis had been personality disorder, not a determination that he hadn't been exposed to a stressor. So I don't see where there's a waiver or not waived. I'm seeing the court decided the issue. It's squarely before us. Your Honor, and I don't want to spend too much time on the waiver point. As you quoted, the board did address the relevant issue. Where we contend there's waiver is that on appeal to the Veterans Court. The Veterans Court went along, basically, with what the board did. So the Veterans Court basically followed the board and said, OK, board got it right. So isn't it before us? But if that issue, in terms of jurisdiction, I believe it is before this court. So the issue with waiver. Your argument is even though the court decided it, there's a waiver because Mr. Kisor didn't argue it to the court. It's not preserved because Mr. Kisor did not argue it. Even though the Veterans Court decided it. Yes, Your Honor. You're not maintaining your waiver argument anymore, as I understand it. Your Honor, I think we prevail on the merits as well. The waiver argument was noted to suggest that the issue wasn't presented to the Veterans Court. As Judge Schall pointed out, the Veterans Court did focus on what the board did and did address that, but did not have the benefit of briefing in that case. In that instance. But that's not a waiver issue. Let's move on. Here's a problem I have with your argument. You seem to really mix up the term material as in 3.156 and relevant. And you're making, you're turning the words relevant official service documents under 3156C1. And your argument, and you heard my exchange with Mr. Carpenter. And I'm exploring the depths of the definition of relevance. And it seems to me that your interpretation coincides with material. It has to be material to the 1982 decision in order to be relevant. But doesn't the regulation itself separate the two terms? The regulation does separate that, Your Honor. And if you look at the regulatory history, the reason was because under reconsideration, you can have an earlier, you can have an effective date going back to the original claim. Whereas if you submit new material evidence to reopen the claim, the effective date is typically the date that you submitted that evidence. It's almost automatic. Yes, but it's a later.  But wasn't available for whatever reason back in 1982. It's information that's relevant in that PTSD was raised in a claim in 1982. That wasn't the diagnosis. And why isn't that information relevant? It's not relevant because, well, two points, Your Honor. It's not relevant because that information doesn't go to anything in 1982 when the claim was denied. The reason the agency at the time didn't go out and get this evidence that wasn't available. It wasn't material in 1982 because the PTSD claim was denied. So it's really not, that's your argument. I think materiality is a stronger, is a higher burden than relevance, but relevance still has to retain some relationship to the claim. I'm glad you acknowledge that. And I agree with you 100% on that. There's a difference here. Material is more restrictive. It's a higher burden, right, than relevance. Yes, Your Honor. So don't you just have to show that there's the new information. And had they presented it in 1982, the examiner would have taken that information and used it as part of its diagnosis and used it in the processing of that particular claim at the time, had it been rejected at that time for whatever reason, because it dealt with, you know, the loss of an arm as opposed to PTSD or something like that. But why is this information not relevant? Because, Your Honor, in 1982, they had no reason to go out and get this information because there was no question about an in-service stressor. So there are lots of service records that were available in 1982 that the agency was under no obligation to go out and receive and collect under duty to assist. It may have been cumulative then to have added that information, but it's still relevant, correct? I mean, you're saying it wouldn't have made a difference even had they had it. My question is, it still belonged. It could have, you know, it's still part of that process in 1982. Well, there was information, as Your Honor points out, or as Judge Schall pointed out, in the record attesting to Mr. Kaiser's experience in Operation Harvest Moon. So there's nothing that prohibits the information from being cumulative. The question is whether it's relevant. Well, I think, Your Honor, relevance has to be defined in context. You can make the argument that anything related to Operation Harvest Moon was relevant, but that does not, I don't think that would be the right interpretation here because that would impose the burden on the agency to go out and get all service records on. And, you know, the regulation says that they do not have to be related to the veteran. Well, I think that's what the regulation is intended to do. I mean, it's to assist the veteran by putting the burden on the administration to go out and get all the information that it possesses at the time that a claim is filed. That's not, I don't think that's correct, Your Honor. I think it's to assist the veteran to put him in the same position he would have been in had those records been available. So, for example, if a record didn't get to the examiner or if a record was classified and an examiner couldn't access it at the time, if it later becomes declassified or the agency finds it, the veteran shouldn't be penalized because that record did not exist at the time his claim was evaluated. But that's not the case here. Here, that same information essentially existed. If that was the issue, the agency would have been under an obligation to go out and get his combat records. What I hear you saying, Mr. Hellman, you would agree that if the original claim had been denied because the examiner had determined there's no evidence that you were in Operation Harvest Moon or in any other combat situation during the period you were in Vietnam, you'd say we'd have a different case. That's entirely correct, Your Honor, yes. You concede the case. In that case, yes. But that's, and that was the case, I think, cited in the reply to Emerson. What you're saying is, in effect, that there were findings of fact made and that the findings of fact that were made in 82-83 were the ultimate information for which any of this would be submitted. So, yes, it would be cumulative, but it also would be compound, in effect, or, I guess, just cumulative. Essentially, Your Honor, it would have been sufficient to, if the in-service stressor was at issue, it would have been either sufficient... In effect, you're saying where the agency makes a concession of the existence of a fact, you don't need anything else, and they've conceded the existence of that fact in 82-83. It was in the operation that those stressors took place. Essentially, yes, Your Honor. The issue was the lack of a medical diagnosis. And just to correct something, when Mr. Carpenter says that there was no diagnosis, to say that there was no diagnosis is inaccurate. There is only one diagnosis, and that's, as Judge Arena pointed out, finding personality disorder, no PTSD. There was a letter from a counselor at a veteran's center that suggested that Mr. Kaiser has symptoms that have been associated with PTSD. And based on that, he had a medical exam, and the medical examiner took that into account, and took into account his testimony about being in Operation Harvest Moon, coming under an ambush, seeing casualties. All of that was there. The only thing that was lacking was a medical diagnosis. This was the same case as in Blue Bomb. And when the PTSD claim was granted later, I think 2006, correct? Yes. Okay. 2007. 2007. It's my understanding that this information we're talking about was part of that record, and was considered when the PTSD claim was granted. There were two things that were considered, Your Honor, when the PTSD claim was granted. The first, as Judge Schall pointed out, is a new medical diagnosis, diagnosing him with PTSD based on his symptoms. And that was lacking in 83. The other information... What was lacking? The symptoms? The diagnosis based on the symptoms. Yes. The medical examiner examined Mr. Kaiser in 1983, and concluded that his symptoms were not... But in 2007, they did look at this material. It was made part of the record. When you say this material, I want to be... Well, this information that we're dealing with today, whether it's relevant or not. Yes, but he also had an additional medical exam. He had a new exam that concluded that he had PTSD. So it wasn't solely a record review in 2007 that went back and granted... There was a medical diagnosis. There was a new medical diagnosis that was absent. But that medical diagnosis, did it include the examiner looking at this material? And reciting it as part of the diagnosis? No, the examiner looked at the symptoms. There was additional... There was... Because he had a medical diagnosis, then the agency looked at an in-service stressor, and it looked at his combat... That's what I mean. So when looking at the stressor, was this material considered? It seems like it was. I mean, there's discussion of the medals that he had... Yes, Your Honor. That was, but that was considered for the in-service stressor. There's no indication that that... We have to be careful not to conflate the medical diagnosis based on symptoms and an in-service stressor. Let me ask you this. It seems to me that there was somewhat of a philosophical change at the VA between 1982 and the middle of the last decade, and that that change favored a more likely finding of PTSD among veterans. Am I correct in that? And it may have involved legislative action as well. I don't know. I'm not aware of any legislative action, and I'm not aware of any official change. Certainly, information and medical knowledge evolves over time, and medical knowledge in 1983 may have been different than 2007, but also symptoms develop over time as well.  Okay. There are no further questions. We respectfully ask for your affirmative decision. We thank you. Mr. Kostner? You got two minutes and 14 seconds. Thank you, Your Honor. I stumbled on the earlier part of my argument with the description of this regulation as remedial. For some reason, that word would not come to me. This is a remedial regulation. It is intended to benefit the veteran. The interpretation relied upon by the board does not benefit the veteran. The interpretation relied upon by the Veterans Court did not benefit the veteran. Let's go over the underlying facts again and what this regulation is intended to look at. It's intended to look at the original claim. There is no dispute in this record that the initial claim was for post-traumatic stress disorder. In support of that, this veteran was going to a VA Vet Center. He got a letter from a VA counselor at that facility that specifically referenced post-traumatic stress disorder. It's in Appendix 17. There was a subsequent C&P examination with an addendum in 1983. That examination gave a diagnosis of intermittent explosive disorder. To go to your question, Judge Wallach, there was a considerable shift in the understanding of post-traumatic stress disorder, not just institutionally by the VA, but by the American Psychiatric Association. This diagnosis was originally accepted in the early 1980s, commensurate with the time of this original diagnosis. At that time, there were much higher requirements for a diagnosis for post-traumatic stress that existed, and the DSM has changed at least three times since that occurred in the 1980s. It is a much more, if you will, liberal view of when a person does or doesn't suffer from post-traumatic stress disorder. The importance of 3.156c is the opportunity for the veteran to have the VA reconsider, based upon the totality of the record as it existed after the VA received service records that existed, and were relevant, and were part of the decision-making process that made the award. Those are the undisputed facts in this case, and that's how this regulation should be interpreted to have the remedial effect of this regulation for the benefit of veterans. Thank you very much. Thank you.